UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RONNIE BEE CISLO,                          )
                                           )
                        Plaintiff,         )
                                           )
             v.                            )          No. 1:18-cv-03265-JPH-DML
                                           )
WEXFORD OF INDIANA, LLC, et al.            )
                                           )
                        Defendants.        )

**Order Granting Defendant Osburn's Motion for Summary Judgment,**
**Granting Plaintiff's Motion to Dismiss Defendant Wexford,**
**and Directing Entry of Final Judgment**

Plaintiff Ronnie Cislo, an inmate currently incarcerated at the LaPorte County Jail, brought this civil rights action under 42 U.S.C. § 1983 alleging that defendants Michael Osburn and Wexford of Indiana, LLC ("Wexford"), implemented an unconstitutional policy for the Indiana Department of Correction ("IDOC") that denied dental treatment to inmates scheduled to be released in less than six months.

Defendant Osburn, an IDOC administrator, contends that he is entitled to summary judgment because he was not responsible for developing the policy at issue and regardless, the policy is not unconstitutional. Additionally, he asserts that he is entitled to qualified immunity. Mr. Cislo has responded in opposition to the motion for summary judgment, and Mr. Osburn has filed a reply. For the reasons explained below, Mr. Osburn's motion for summary judgment is **granted**.

## I.      Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).

To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inference in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no reasonable jury could find for the nonmoving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Not every factual dispute between the parties will prevent summary judgment, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

2

## II.    Statement of Facts

The following statement of facts has been evaluated pursuant to the standard set forth above. The facts are considered undisputed except to the extent that disputes of fact are noted.

Mr. Cislo began his incarceration with the IDOC in May 2018 when he arrived at the Reception Diagnostic Center ("RDC"). Dkt. 1 at 3. When he arrived at RDC, Mr. Cislo was examined by medical staff, dental staff, and mental health staff. Dkt. 66-1 (hereinafter "Cislo Dep.") at 11:15-23.[1] Because his incarceration at RDC was temporary, he received referrals for dental, vision, and mental health treatment to be provided at his next place of incarceration within IDOC. *Id.* at 12:3-15.

In late May 2018, Mr. Cislo was transferred to Pendleton Correctional Facility ("Pendleton"). Dkt. 1 at 4. When he met with medical staff at Pendleton, he informed them that he needed cavities filled. Cislo Dep. at 15:13-16. Mr. Cislo believed he had cavities because he was experiencing pain in his back, top teeth. *Id.* at 15:20-16:9.

While incarcerated at Pendleton, Mr. Cislo submitted two Request for Health Care forms ("RFHC") concerning dental care. In the first RFHC, dated August 7, 2018, Mr. Cislo stated that he was experiencing tooth pain, and he asked for his cavities to be filled before his release date. Dkt. 1-1 at 1. He also inquired as to whether he needed a root canal. *Id.* The response to this RFHC was, "You are not eligible for dental treatment, release date is within 90 days." *Id.*

Mr. Cislo submitted a second RFHC on October 4, 2018. It stated, "I would like my teeth checked and filled if there are cavities. I also would like my teeth cleaned." Dkt. 1-1 at 2. The

---

[1] Citations to Mr. Cislo's deposition reference the relevant page and line numbers of the deposition transcript, not the page numbers of the exhibit.

response to this RFHC was similar to the first: "You are not eligible for dental treatment as your release date is within 30 days. Sorry!" *Id.*

During his incarceration at Pendleton, staff informed Mr. Cislo that Michael Osburn, Executive Director of Adult Facilities at IDOC, developed the policies concerning dental care. Dkt. 1 at 5; *see also* Cislo Dep. at 28:8-29:19; dkt. 66-2 at ¶ 1. Mr. Cislo wrote to Mr. Osburn in 2018 about the way he was being treated at Pendleton, but he did not mention his dental issues.[2] Cislo Dep. at 25:22-26:9. Mr. Osburn forwarded Mr. Cislo's letter to mental health staff at Pendleton. *Id.* at 26:10-12. Mr. Cislo also wrote to the IDOC ombudsman and referenced his dental issues. *Id.* at 26:16-27:6. The IDOC ombudsman's response stated the issue was being investigated, and Mr. Cislo received no further communication from the ombudsman. *Id.* at 27:7-13.

Mr. Osburn contends that he was not the final decision-maker as to Mr. Cislo's dental care. *Id.* at ¶ 8. Rather, he defers to IDOC's contracted health care provider, which is currently Wexford, to make all decisions concerning medical and dental treatment for inmates. *Id.* at ¶ 4. Mr. Osburn also states that he was not the final decision-maker as to the dental care policy within IDOC and that he was not involved with developing the policies set forth in the Dental Services Manual. *Id.* at ¶¶ 10-11.

The Dental Services Manual ("Manual") "provides general guidelines regarding the manner in which Dental Services are delivered within" IDOC. Dkt. 66-3 at 2. It sets forth five

---

[2] In his response, Mr. Cislo asserts that he wrote more than one letter to Mr. Osburn and that he mentioned his dental issues. Dkt. 77 at 2, 5. This factual assertion directly contradicts Mr. Cislo's deposition testimony. *See* Cislo Dep. 25:22-26:9, 27:14-25. In light of this contradiction and Mr. Cislo's failure to include any details in his response as to when he wrote Mr. Osburn, what information the letters contained, and whether Mr. Osburn responded, the Court does not consider the factual allegations in Mr. Cislo's response concerning his communications with Mr. Osburn. *See James v. Hale*, 959 F.3d 307, 315-16 (7th Cir. 2020) ("[E]very federal court of appeals permits a judge to disregard a 'sham' affidavit—typically an affidavit that contradicts prior deposition testimony." (collecting cases)).

categories and prioritizes dental services consistent with those categories. *Id.* at 8. The highest priority category includes dental emergencies which are "marked by extreme pain, overt spreading infection, severe bleeding, or severe traumatic disruption of tissue." *Id.* The Manual identifies the following as dental emergencies: post-extraction with bleeding, swelling, and/or pain; dry socket; severe dental pain not responsive to simple oral analgesic medication; tooth abscess with infection or drainage; jaw fracture; traumatic facial injury involving the gums, teeth, and/or bones of the jaw; and irreversible pulpitis." *Id.* at 8-9.

The third highest priority category is "restorative services." *Id.* at 8. Treatment of a cavity is considered a restorative service. The Manual provides: "Restorative procedures should not be provided during the ninety (90) days prior to release from confinement unless the delay in care would result in significant deterioration, infection, or pain." *Id.* at 9.

### III.    Discussion

Mr. Cislo brings claims against Mr. Osburn in both his individual and official capacities. Dkt. 1 at 3. He alleges that Mr. Osburn implemented the policy contained in the Manual and that this policy violates his rights under the Eighth Amendment. Dkt. 1 at 5. Mr. Osburn has moved for summary judgment, arguing that the undisputed facts establish that he did not implement the policy at issue and regardless, the policy is not unconstitutional. He also contends that he is entitled to judgment as a matter of law under the doctrine of qualified immunity.

### A.  Official Capacity Claim

An official capacity suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore, a suit against an officer of a state agency in his official capacity is a suit against the state, and the

state is not a "person" subject to suit under 42 U.S.C. § 1983. *Kolton v. Frerichs*, 869 F.3d 532, 535 (7th Cir. 2017); *Foreman v. Wadsworth*, 844 F.3d 620, 624 n.1 (7th Cir. 2016) ("A state official in his or her official capacity is not deemed a "person" under § 1983."). Consequently, Mr. Cislo cannot assert a claim for monetary damages against Mr. Osburn in his official capacity.

Any claim that Mr. Cislo may have had against Mr. Osburn in his official capacity for prospective injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908) is moot because Mr. Cislo was released from Pendleton in October or November 2018. Cislo Dep. at 6:16-18. When an individual is released from incarceration, any claim for injunctive relief becomes moot unless the individual makes a "reasonable showing that he will again be subject to the alleged illegality." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)); *see also Jones v. Butler*, 663 F. App'x 468, 470 (7th Cir. 2016) (noting claim for injunctive relief was moot because plaintiff received requested transfer and his allegations that he might be returned were mere conjecture). There is no evidence here suggesting that Mr. Cislo will be subject again to the provisions in the Manual that limit the availability of dental care to inmates at Pendleton.

Mr. Cislo cannot assert a claim for monetary damages against Mr. Osburn in his official capacity and his claim for injunctive relief is moot. Therefore, Mr. Osburn is entitled to judgment as a matter of law on the claim against him in his official capacity.

### B. Individual Capacity Claim

Mr. Cislo also asserts a claim against Mr. Osburn in his individual capacity. Dkt. 1 at 3. For purposes of a claim under § 1983, "a public employee's liability is premised on [his] knowledge and actions, and therefore requires evidence that each defendant, through [his] own actions, violated the Constitution." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 630 (7th Cir. 2017); *see also*

*Wilson v. Warren Cnty.*, 830 F.3d 464, 469 (7th Cir. 2016). "A defendant is personally responsible 'if the conduct causing the deprivation occurs at his direction or with his knowledge and consent.'" *Wilson*, 830 F.3d at 469 (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Here, the undisputed evidence establishes that Mr. Osburn was not personally involved in either the denial of dental services to Mr. Cislo or the development of the policy outlined in the Manual. Mr. Osburn testified that he was not the final decisionmaker as to either Mr. Cislo's dental care or IDOC dental care policy, and that he was not involved in formulating the policies contained in the Manual. *See* dkt. 66-2 at ¶¶ 8-11.

Mr. Cislo contends that Mr. Osburn was the final decisionmaker with respect to the Manual, *see* dkt. 77 at 2, but he has presented no evidence to support this assertion. In his surreply, he alleges that he cannot provide evidence because staff at Pendleton "lost or destroyed" his discovery and property. Dkt. 80 at 1. However, Mr. Cislo has not described what evidence or discovery he had in his possession that would have created a genuine issue of material fact. Additionally, Mr. Osburn designated a copy of the Manual in support of his motion for summary judgment, and the preface of the Manual states that any concerns about it should be communicated to the Chief Medical Officer. *See* dkt. 66-3 at 2. The Manual identifies Dr. William Van Ness as the Chief Medical Officer for IDOC. *Id.* Nowhere does the Manual reference Mr. Osburn or the Executive Director for Adult Facilities. Mr. Cislo has failed to create a genuine issue of material fact as to Mr. Osburn's involvement in developing or adopting the Manual. Accordingly, judgment as a matter of law is warranted on Mr. Cislo's claims against Mr. Osburn in his individual capacity.

## IV.   Conclusion

For the foregoing reasons, Mr. Osburn's motion for summary judgment, dkt. [66], is

**granted**. All claims against Mr. Osburn are **dismissed with prejudice**.

Mr. Cislo's motion to dismiss all claims against defendant Wexford, dkt.[84], is **granted**.

All claims against Wexford are **dismissed with prejudice**.

All of Mr. Cislo's claims against all defendants have been resolved. Final judgment

consistent with this Order and the screening entry, dkt.[6], shall now enter.

**SO ORDERED.**

Date: 11/2/2020

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

RONNIE BEE CISLO
Laporte County Jail
809 State St, Ste 201A
Laporte, IN 46350

All Electronically Registered Counsel